WILL COUNTY STATE'S ATTORNEY, Petitioner, v. THE ILLINOIS
STATE LABOR RELATIONS BOARD *et al.*, Respondents.

Third District   No. 3—91—0469

Opinion filed June 16, 1992.

Edward Burmila, Jr., State's Attorney, of Joliet (Philip Mock, Assistant State's Attorney, and David A. Hibben, of State's Attorneys Appellate Prosecutor's Office, of counsel), for petitioner.

Roland W. Burris, Attorney General, and Brian Reynolds, of Illinois State Labor Relations Board, both of Springfield, and Jacalyn J. Zimmerman, of Illinois State Labor Relations Board, of Chicago (Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Cornfield & Feldman, of Chicago (Jacob Pomeranz, of counsel), for other respondent.

JUSTICE BARRY delivered the opinion of the court:

The State's Attorney of Will County has petitioned this court for review of an order of the Illinois State Labor Relations Board (Board) which found that the State's Attorney violated sections 10(a)(1) and 10(a)(4) of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, pars. 1610(a)(1), (a)(4)) by refusing to engage in collective bargaining with Local 1028 of the American Federation of State, County and Municipal Employees. The issue in dispute is whether Local 1028 is the historical bargaining representative of certain employees of the Will County State's Attorney.

Section 11(e) of the Illinois Public Labor Relations Act provides for direct judicial review in the appellate court of final orders of the Board. Supreme Court Rule 335 (134 Ill. 2d R. 335) mandates application of appropriate rules of administrative review to this proceeding. Thus, the findings and conclusions of the administrative agency on questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) Therefore, the sole issue before this court is whether the decision of the Board that a historical bargaining relationship exists between Local 1028 and the State's Attorney is contrary to the manifest weight of the evidence. We conclude that it is not.

This litigation commenced on December 7, 1989, when Local 1028 filed a charge of unfair labor practices against the State's Attorney for refusing to bargain with Local 1028 as to wages, hours, terms and conditions of employment of employees in violation of section 10(a) of the Act. The particular State's Attorney's employees designated were two clerical receptionists, one data entry clerk, and one victim-witness assistant.

■ Recognition of labor organizations as collective bargaining representatives for public employees is governed by section 9 of the Public Labor Relations Act, effective July 1, 1984, which provides in part:

"(b) * * *

In cases involving an historical pattern of recognition, and in cases where the employer has recognized the union as the sole and exclusive bargaining agent for a specified existing unit, the Board shall find the employees in the unit then represented by the union pursuant to the recognition to be the appropriate unit.

* * *

(c) Nothing in this Act shall interfere with or negate the current representation rights or patterns and practices of labor organizations which have historically represented public employees for the purpose of collective bargaining, including but not limited to the negotiations of wages, hours and working conditions, discussions of employees' grievances, resolution of jurisdictional disputes, or the establishment and maintenance of prevailing wage rates * * *." Ill. Rev. Stat. 1989, ch. 48, pars. 1609(b), (c).

At the hearing before a hearing officer, Local 1028 presented the testimony of AFSCME staff member Al Harris, concerning collective bargaining agreements negotiated between Local 1028 and the Will County Board (County Board) in 1975, 1977, 1979, 1979-80, 1980-83, 1983-86 and 1987-89. Each contract purported to cover employees of all county offices, including listed clerical employees of the State's Attorney's office. During those years, the chairman of the County Board notified county office holders each time negotiations were about to begin, but, according to Harris, office holders did not attend negotiating sessions except in 1975 when an assistant State's Attorney attended as legal advisor to the County Board. Harris stated that no State's Attorney ever repudiated the contract with Local 1028 and that, in fact, State's Attorney employees received at least the minimum wages provided in the contract.

In 1987 State's Attorney Edward Petka resigned following his election to the Illinois legislature, and Edward Masters, newly appointed to the position, signed the collective bargaining agreement for the period December 1, 1987, to November 30, 1989, as did other county office holders. During all the prior years, the contracts were signed solely by the chairman and members of the County Board.

The parties stipulated that Petka knew of the contracts during the years he served as State's Attorney, including contracts beginning in 1977, 1979, 1980, and 1983, and he did not communicate to either Local 1028 or the County Board that he would be bound by the contracts or that he would not be bound although it was his opinion that he was not bound.

Edward Burmila testified that he took office as elected State's Attorney on December 1, 1988, after serving as an assistant since 1977. He stated that, while an assistant, he had discussed the union contract with Petka and that he did not know the contract covered the State's Attorney's office. He admitted that the contract did refer to employees of the office and stated that in the normal course of business, the contract would be discussed and reviewed with the State's Attorney. He also testified that the State's Attorney's office did not comply with contract provisions requiring a union bulletin board, 15-minute breaks for employees, posting of job openings, or progressive discipline. He further stated that he did not consider himself bound by a contract signed by his predecessor.

The hearing officer issued a recommended decision and order finding that the State's Attorney violated the Act. The Board adopted the recommendation of the hearing officer as its decision. In its decision and order, the Board explicitly found that the State's Attorney has afforded *de facto* recognition to Local 1028 based upon the the State's Attorney's participation in and review of the collective bargaining process and the State's Attorney's failure to disavow the County Board's collective bargaining actions. The Board also found that the State's Attorney "for the most part" abided by the agreements between the County Board and Local 1028.

■ On review of a decision of the State Labor Relations Board, we may not reweigh evidence or make independent determinations of fact. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 493 N.E.2d 1130.) The Board's decision must be confirmed unless it is against the manifest weight of the evidence. (*Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 506 N.E.2d 390.) Moreover, the language of the Act favors historical recognition and must be given a liberal construction in order to carry out its purpose. *Village of Oak Park v. Illinois State Labor Relations Board* (1988), 168 Ill. App. 3d 7, 522 N.E.2d 1259.

■ Both formal and *de facto* recognition are provided for in section 9(b) of the Act, quoted above. We held in *City of Peoria v. Illi-*

*nois State Labor Relations Board* (1988), 165 Ill. App. 3d 429, 435, 518 N.E.2d 1325, that *de facto* recognition occurs where an employer has impliedly recognized a labor organization as the exclusive representative of a specified unit, and we said:

> "The test for determining implied recognition is whether the employer has manifested an intent to establish a bargaining relationship. *** [W]e believe section 9(c) of the Act describes those practices to be considered in determining whether the employer has manifested an intent to bargain collectively."

Accord *City of Chillicothe v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 217, 518 N.E.2d 734.

The testimony of Harris indicates that the State's Attorney's office has paid at minimum the negotiated wage rates to its clerical employees. The evidence strongly supports the Board's finding that the State's Attorney abided by the contracts "for the most part." The evidence that certain provisions of the contract were not followed was not sufficient to require a reversal since matters such as the location of a union bulletin board, the posting of job openings, and providing 15-minute breaks are of much lesser importance than the wage schedule.

■ The facts of the case before us indicate that the State's Attorney personally did not negotiate any of the collective bargaining agreements and did not formally accept any of the contracts prior to 1987. Notwithstanding these facts, we agree with the Board that the State's Attorney can be held to have ratified the actions of the County Board, acting as his agent, by not repudiating those actions once he knows of them. This view is in accord with *City of Burbank v. Illinois State Labor Relations Board* (1989), 185 Ill. App. 3d 997, 1003, 541 N.E.2d 1259, where the court said:

> " 'Ratification occurs upon the express or implied adoption of the acts of another by one for whom the other assumes to be acting, even without authority; and the consequences are the same as if the acts ratified had been authorized in the beginning.' (*Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 866.) The principal can ratify the actions of his agent by not repudiating such acts once he has knowledge of them or by accepting the benefits of those acts."

Here the State's Attorney has either actual or imputed knowledge of the content of the contracts in his capacity as legal counsel to the County Board. There is no evidence of disavowal or repudiation. Former State's Attorney Petka indicated that he knew the collective bargaining agreements negotiated by the County Board purported to cover the State's Attorney's employees and that he never stated that

he would not be bound by those contracts. Consequently, the evidence supports the Board's finding that the State's Attorney ratified those contracts entered into before 1984, thus creating an historical pattern of recognition of Local 1028 as the bargaining agent for the State's Attorney's employees.

The State's Attorney argues that the County Board could not enter into a valid contract concerning employees of his office because the County Board is not the employer or joint employer of those employees and, further, because the State's Attorney is an officer of the judicial branch of government. The State's Attorney relies upon *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, 537 N.E.2d 784, where the supreme court ruled that counties are not joint employers of circuit court employees for purposes of collective bargaining because to do so would be contrary to the doctrine of separation of powers.

In the case before us, historical recognition does not depend upon a theory of joint employment but rather upon past State's Attorneys' ratification of contracts negotiated on behalf of their employees in the years prior to the enactment of the Public Labor Relations Act, *i.e.*, before July 1, 1984. Here there is evidence that the County Board notified the State's Attorney in advance prior to undertaking negotiations, that the State's Attorney reviewed each agreement, that the State's Attorney had knowledge that his employees were covered by each contract, that the State's Attorney never repudiated any contract, and that at least the wage schedules were followed. Moreover, the first time the collective bargaining agreement was prepared with space for the signatures of public office holders, then State's Attorney Edward Masters signed the contract, indicating a continuation of a past pattern of recognition of Local 1028. This evidence supports the decision of the Board.

At oral argument before this court, the State's Attorney contended that the four positions in dispute were not listed prior to 1984 and thus were not subject to union representation on a theory of an historical pattern of recognition. Since this issue was not raised before the Board, it was waived and cannot be raised for the first time on appeal. Furthermore, the issue here is whether Local 1028 is the bargaining representative for a unit of employees, and the addition of new positions to the unit must be anticipated in this modern world without invalidating the historical representation of the unit. Having concluded that the employees of the State's Attorney's office as a unit are represented by Local 1028, the Board correctly held that the four positions in question are also subject to such representation.

The decision of the Board was not against the manifest weight of the evidence and is affirmed.

Affirmed.

SLATER and GORMAN, JJ., concur.